UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES KELLY,

                                    Plaintiff,

                 -against-

STATE OF NEW YORK, LETITIA JAMES,
DANIEL M. FISHER, JR., MARLENE BUDD,
ARLEN SPINNER, CAROL MACKENZIE,
CHERYL JOSEPH, JOHN J. LEO, OFFICER
RODRIGUEZ, Badge # 492, OFFICER FEILER,
Badge # 423,

                                    Defendants.
------------------------------------------------------------X

<u>For Online Publication Only</u>


**<u>MEMORANDUM & ORDER</u>**
19-CV-2063 (JMA) (ARL)

**AZRACK, United States District Judge:**

Before the Court are defendants' motions to dismiss the complaint filed by <u>pro se</u> plaintiff

James Kelly ("Plaintiff").   For the reasons that follow, the complaint is dismissed in its entirety

without prejudice for lack of subject matter jurisdiction pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(h)(3).

## I. BACKGROUND

### A. <u>Procedural History</u>

On April 9, 2019, Plaintiff commenced this action by filing a fee paid complaint against

the State of New York, New York State Attorney General Letitia James, in her personal and official

capacity ("Attorney General James"), Daniel M. Fisher, Jr., retired Hempstead Town Clerk, in his

personal and official capacity ("Fisher"), Hon. Marlene Budd, former New York State Supreme

Court Judge, in her personal and official capacity ("Judge Budd"), Hon. Arlen Spinner, former

New York State Supreme Court Judge, in his personal and official capacity ("Judge Spinner"),

Hon. Carol Mackenzie, New York State Supreme Court Judge, in her personal and official capacity

("Judge Mackenzie"), Hon. Cheryl Joseph, New York State Supreme Court Judge, in her personal

and official capacity ("Judge Joseph"), Hon. John J. Leo, New York State Supreme Court Judge, in his personal and official capacity ("Judge Leo"), State University of New York Police Officer Rodriguez, Badge # 492 ("Officer Rodriguez"), and State University of New York Police Officer Feiler, Badge # 423 ("Officer Feiler" and collectively, "Defendants") seeking to challenge, inter alia, the constitutionality of New York Domestic Relations Law § 15.[1]   (ECF No. 1.)   Defendants each requested a pre-motion conference in anticipation of filing a motion to dismiss the complaint and Plaintiff responded to those requests.   (ECF Nos. 8, 10, and 15.)   By Electronic Order dated June 4, 2019, the Court waived its pre-motion conference requirement and set a briefing schedule for the motions to dismiss.   The fully briefed motions to dismiss were filed on September 27, 2019.   (ECF Nos. 23 and 24.)

**B. Plaintiff's Allegations and the Underlying Litigation in State Court**

The following facts are taken from the complaint and judicially noticed records of related state court proceedings.   See Blue Tree Hill Inv. (Can.) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (taking judicial notice of state court records). This action arises from the purchase of a marriage license in 1998, and a post-judgment, contested matrimonial action which is currently pending in the New York State Supreme Court, Suffolk County, Spata v. Kelly, 17657-2014 (the "State Court action").   (Compl., generally, and at ¶ II.C.) Plaintiff alleges that he purchased a marriage license from the then-Hempstead Town Clerk, Fisher, on August 12, 1998, and that Fisher "issued the marriage license denying me my fundamental right to marry religiously."   (Id. at ¶¶ II.C, III.C.)

---

[1]  Section 15 of the New York Domestic Relations Law provide the applicable fees for a marriage license.   Subsection (4) provides for a $30.00 fee payable to the town or city clerk and subsection (5) provides for a $25.00 fee payable to the city clerk of the City of New York.   See N.Y. Dom. Rel. Law § 15(4)-(5) (McKinney 2019).

Plaintiff married Stacey Spata ("Spata") on September 19, 1998.   (Id. at ¶ III.C.)   On May 1, 2014 Plaintiff and Spata separated and in August 2014 Plaintiff filed for custody of their children in Family Court.   Spata served Plaintiff with divorce papers on September 5, 2014.   (Id.) Plaintiff's action in Family Court was removed by Spata to the Supreme Court, Suffolk County. (Id.)

The Complaint makes various allegations regarding the pending State Court action.   (Id. at ¶¶ II.B, II.C, III.C.)   In addition to claiming that New York's statutes concerning marriage license requirements—including the fees imposed for such licenses—are unconstitutional, Plaintiff also alleges that during the State Court action he has suffered "deprivations of rights under color of law without due process" including "deprivations of the right to parent [his] children without having met the clear and convincing evidentiary standard," "deprivation of [his] liberty . . . for having recognized and followed a void order," "deprivation of equal process under the law," and "deprivation of my right to be heard on the record."   (Id. at ¶ II.C.)   Plaintiff complains, inter alia, that he "alone" was ordered by Judge Carol Mackenzie to "have a forensic psychological examination in order to have any relation with my children."   (Id.)

Plaintiff also alleges that he was arrested by Officers Rodriguez and Feiler on November 6, 2018 regarding a no-contact order issued by Judge Mackenzie, and that he "followed the no contact order that I knew to be void to the letter so that my 11 year old son would not go through life thinking that when he went in for a medically necessary circumcision, that I didn't care enough about him to show up."   (Id.)  Plaintiff maintains that he did not violate the no-contact order because he was, merely, "peaceably standing in a hallway within [his son's] line of sight" at the

time of his arrest.   (Id.)   Additionally, Plaintiff maintains that Judge Mackenzie "was not in a position to write a valid no contact order."   (Id.)

 Plaintiff also alleges that, "[b]oth judges Cheryl Joseph and Carol MacKenzie issued void orders depriving me of my right to parent our children."   (Id. at ¶ II.C.)   The complaint further states that following Judge Mackenzie's recusal and the reassignment of the case to Judge Leo, Judge Leo also acted without jurisdiction and subjected Plaintiff to "judicial abuse."   (Id.) Further, Plaintiff complains that Judge Leo summarily dismissed Plaintiff's argument concerning the constitutionality of N.Y. Dom. Rel. L. § 15(4) & (5).   (Id.)   Additionally, Plaintiff alleges that he has been unable to find a State of New York judge who has no pattern of violating the Constitutionally protected rights of litigants, is truly impartial, knows the law, maintains subject matter jurisdiction, and can provide both due process and equal protection under the law   (Id. at ¶ VI.2.)   Plaintiff challenges, as unconstitutional, the 1907 implementation of the marriage license requirement in New York.   (Id. ¶ at VI.4.)

As a result of the foregoing, Plaintiff brings claims pursuant to 18 U.S.C. §§ 241, 242; 31 U.S.C. § 3729; and 42 U.S.C. §§ 1983, 1985 because, inter alia, his "right to marry religiously has been denied . . . ."   (Id. at ¶¶ II.A-B.)   Plaintiff claims to have suffered "emotional, psychological, financial, and physical health issues."   (Id. at ¶ IV.)

For relief, Plaintiff seeks an order: (1) declaring New York Domestic Relations law §§ 15(4)-(5) unconstitutional; (2) finding that all of the New York State Court judges involved in Spata v. Kelly, 17657-2014 lacked subject matter jurisdiction; (3) removing Spata v. Kelly, 17657-2014 to federal court; (4) awarding him "all court costs" including "half of the cost of my marriage license"; and (5) awarding him $25 million dollars "for the emotional pain and suffering endured"

as well as for the "continued . . . abuse [by the Judges involved] of constitutionally protected rights that foundationally began with the index case deprivation of rights under color of the law without due process known as the marriage license."   (Id. at ¶ V.)

## C. **Defendants' Motions**

All Defendants have filed motions to dismiss.   The State of New York, Attorney General James, Judge Budd, Judge Spinner, Judge Mackenzie, Judge Joseph, Judge Leo, Officer Rodriguez and Officer Feiler (collectively, the "State Defendants") move to dismiss pursuant Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) claiming that Plaintiff's claims for money damages are barred by the Eleventh Amendment; and that judicial immunity and the Rooker-Feldman doctrine bar Plaintiff's remaining claims.   (ECF No. 24.)   The State Defendants also assert that this Court should abstain from adjudication of Plaintiff's claims under Younger v. Harris and Burford v. Sun Oil Co., and that Plaintiff's claims against Officers Rodriguez and Feiler are barred by qualified immunity.   Finally, the State Defendants argue that Plaintiff's claims: (1) are vague and conclusory and do not state a claim for relief; (2) are barred by the applicable statute of limitations insofar as his claims rely on matters that pre-date April 9, 2016; and (3) lack personal jurisdiction because none of the State Defendants have been properly served.   (Id.)

Fisher moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6) because: (1) the statute of limitations bars Plaintiff's claims; (2) qualified immunity protects Fisher from liability; (3) the complaint fails to state a claim for relief; and (4) Plaintiff's allegations are insufficient to meet the pleading requirements.   (ECF No. 23.)

Plaintiff opposed Defendants' motions in a 210-page submission with an additional 96 pages of exhibits.   (ECF Nos. 23-5, 23-6, 24-3, 24-4.)   !

## II. DISCUSSION

### A. <u>Standard of Review</u>

The Court is mindful that when considering a motion to dismiss a <u>pro se</u> complaint, the Court must construe the complaint "liberally" and interpret it "to raise the strongest arguments that [it] suggest[s]." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (<u>per curiam</u>) (internal citation and quotation marks omitted). Nonetheless, "mere conclusions of law or unwarranted deductions need not be accepted." <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

### 1. **Fed. R. Civ. P. 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>see</u> Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under Rule 12(b)(1), the Court accepts all factual allegations in the complaint as true. <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998). The party asserting jurisdiction, in this case Plaintiff, bears the burden of showing by a preponderance of the evidence that the Court has subject matter jurisdiction. <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003). In resolving a jurisdictional issue, the Court may consider "affidavits and other materials beyond the pleadings" but "may not rely on mere conclusions or hearsay statements contained" therein. <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004).

6

Notwithstanding the liberal pleading standard afforded <u>pro se</u> litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking.   <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 700-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court <u>sua sponte</u>.   <u>Id.</u>   "If subject matter jurisdiction is lacking, the action must be dismissed."   <u>Id.</u> at 700-01; <u>see also</u> Fed. R. Civ. P. 12(h)(3).

### 2.   Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).   Mere labels and legal conclusions will not suffice. <u>Twombly</u>, 550 U.S. at 555.   In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).

## B. <u>Subject Matter Jurisdiction</u>

Plaintiff's remaining claims are brought, primarily, pursuant to Sections 1983 and 1985. Plaintiff seeks to challenge the constitutionality of N.Y. Domestic Relations Law § 15(4)-(5) and alleges that the Defendants conspired to violate his civil rights in connection with New York's marriage license requirement and during his pending state court post-judgment contested matrimonial action.   (Compl. at ¶¶ II.A-C.)   The Court lacks subject matter jurisdiction over

Plaintiff's claims and, even if the Court had subject matter jurisdiction, it would abstain from exercising that jurisdiction under Younger v. Harris, 401 U.S. 37 (1971).

### 1.   The Younger Abstention Doctrine

Under the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971), this Court must abstain from hearing Plaintiff's claims for injunctive and declaratory relief.   Prior to the Supreme Court's decision in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), the Second Circuit had held that district courts must abstain under Younger "whenever the three conditions identified in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), were satisfied: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."   Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (citations and internal marks omitted).   In Sprint, however, the Supreme Court "'clarified that district courts should abstain from exercising jurisdiction only in three "exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'"   Falco, 805 F.3d at 427 (quoting Sprint, 457 U.S. at 78.)   Although the three conditions identified in Middlesex and other prior precedent "are not dispositive, it remains unclear how much weight [should be afforded to] these 'additional factors' after Sprint."   Falco, 805 F.3d at 427.

Insofar as Plaintiff seeks an order declaring New York Domestic Relations law §§ 15(4)-(5) unconstitutional and finding that all of the New York State Court judges involved in Spata v.

Kelly, 17657-2014 lacked subject matter jurisdiction, as well as removing Spata v. Kelly, 17657-2014 to this Court, (Compl. at ¶ V), such injunctive relief that would cause this Court to improperly intervene in Plaintiff's on-going state court post-judgment divorce proceedings.

Here, Younger and Sprint Commc'ns, Inc. require this Court to abstain.   Plaintiff's complaint "implicates the way that New York courts manage their own divorce and custody proceedings--a subject in which 'the states have an especially strong interest.'"   Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973)). Additionally, New York has an important interest in the accurate and bias-free functioning of its judicial system.   See, e.g., Pennzoil v. Texaco, Inc., 481 U.S. 1, 12-14 (1987) (state interest in regulating judicial procedures); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (state interest in functioning of judicial system).

This Court will not interfere in Plaintiff's on-going State Court post-judgment divorce and custody proceedings, which Plaintiff's claims are presided over by state court judges who are allegedly   biased against him and should have recused themselves.   The court's orders at issue in those civil proceedings implicate New York's "interest in enforcing the orders and judgments of its courts" and were issued by New York courts "in furtherance of the [their] ability to perform their judicial functions.'"   Sprint Comm'ns, Inc., 571 U.S. at 72-73, 78; see Bukowski v. Spinner, 709 F. App'x 87, 88 (2d Cir. 2018) (affirming "the dismissal of [plaintiff's] complaint on the ground that federal-court abstention is required under Younger . . . insofar as [plaintiff] seeks declaratory or injunctive relief that would interfere with a "[s]tate court's ability to perform its judicial function in . . . [an ongoing] custody proceeding[ ]") (quoting Falco, 805 F.3d at 425); see

also Aaron v. O'Connor, 914 F.3d 1010, 1017 (6th Cir. 2019) ("We conclude that the ability of the courts of the State of Ohio to determine when recusal of a judge or justice is appropriate and to administer the recusal decision process in accordance with state law operates 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'") (citation omitted). Accordingly, the Court abstains from adjudicating Plaintiff's claims for declaratory and injunctive relief pursuant to the Younger abstention doctrine.

Unlike claims for declaratory and injunctive relief, the Second Circuit instructs that claims for monetary damages should not be dismissed under Younger abstention.   Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000).   Accordingly, the Court next considers plaintiff's claims seeking monetary damages.

### 2. The Domestic Relations Exception

Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds.   Marshall v. Marshall, 547 U.S. 293, 308 (2006) (internal quotation marks and citation omitted); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992)).   This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack."   Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, Plaintiff's claims seek to challenge determinations concerning child custody and visitation made in the state court case during his underlying matrimonial action.   (See Compl. at

¶¶ II.C, III.C.)   Plaintiff alleges that he "alone" was ordered by Judge Carol Mackenzie to "have a forensic psychological examination in order to have any relation with my children."   (Compl. ¶ III.C.)   Plaintiff also complains that his "relationship with my children was denied", that Judge Mackenzie's "no contact order" was void, and that "[b]oth judges Cheryl Joseph and Carol Mackenzie issued void orders depriving me of my right to parent our children."   (Id. at ¶ II.C.) Further, Plaintiff alleges that Judge Leo also acted without jurisdiction and summarily dismissed Plaintiff's argument concerning the constitutionality of N.Y. Dom. Rel. L. § 15(4) & (5)] [] [and] maintained that the pattern of the systematic deprivation of my rights as a litigant to the financial benefit of his employer, the State of New York.   (Id.)   Plaintiff seeks, inter alia, a ruling that all of the New York State Court judges involved in Spata v. Kelly, 17657-2014 lacked subject matter jurisdiction.   (Id. at ¶ V.) Such claims implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations.   Specifically, the Supreme Court has recognized "that [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."   Ankenbrandt, 504 U.S. at 703 (internal quotation marks and citation omitted); Sobel v. Prudenti, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." (internal quotation marks and citation omitted); see also Hernstadt v. Hernstadt, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta [of In re Burrus, 136 U.S. 586(1890)], it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, a fortiori, rights of visitation.").

Although Plaintiff styles his claims as raising constitutional issues, the allegations stem from an on-going state domestic relations matter and are thus outside this Court's jurisdiction.

See McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (district court lacked subject matter jurisdiction because former husband's 42 U.S.C. § 1983 action, in which he claimed that his constitutional rights were violated in state court child support proceedings, would require the court to "re examine and re interpret all the evidence brought before the state court") (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations)); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders)..

Accordingly, because Plaintiff seeks a determination that the prior state court orders in the underlying contested matrimonial action are void, including those concerning custody and/or visitation with his children, the Court lacks subject matter jurisdiction under the domestic relations exception to this Court's jurisdiction.   The complaint is thus dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

### 3.   **Rooker-Feldman Doctrine**

In addition, this Court is also divested of subject matter jurisdiction by the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determination).   The Rooker-Feldman doctrine establishes "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."   Sung Cho v. City of New York, 910 F.3d 639, 644 (2d Cir. 2018) (quoting Hoblock, 422 F.3d at 84).   This

12

doctrine is the "clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock, 422 F.3d at 84. At its core, the Rooker-Feldman doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

For the Rooker-Feldman doctrine to apply, the Second Circuit requires four elements to be met: (1) "the federal-court plaintiff must have lost in state court," (2) "the plaintiff must complain of injuries caused by a state-court judgment," (3) "the plaintiff must invite district court review and rejection of that judgment," and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (citing Hoblock, 422 F.3d at 85) (internal quotation marks and citations omitted). The first and fourth requirements are procedural, while the second and third requirements are substantive. Id. As discussed below, all four of these requirements are met here, and the Rooker-Feldman doctrine therefore bars adjudication of Plaintiff's claims in this Court.

### i. Procedural Requirements of Rooker-Feldman

The procedural requirements of the Rooker-Feldman doctrine have been satisfied. The first and fourth requirements have been met because Plaintiff lost in state court before he commenced this action on April 9, 2019. Plaintiff complains that Judge Mackenzie ordered him to "have a forensic psychological examination in order to have any relation with my children" and that his "relationship with my children was denied." (Compl. at ¶ III.C.) Plaintiff also challenges Judge Mackenzie's "no contact order" as "void" and claims that "[b]oth judges Cheryl

13

Joseph and Carol MacKenzie issued void orders depriving me of my right to parent our children."
(Id.)   Further, Plaintiff alleges that Judge Leo summarily dismissed Plaintiff's argument
concerning the constitutionality of N.Y. Dom. Rel. L. § 15(4) & (5).   (Id.)   Thus, Plaintiff has
consistently lost in state court and these state court orders all pre-date Plaintiff's April 9, 2019
filing of his complaint in this Court.

Although the underlying state court proceedings are on-going, courts in this Circuit have
routinely applied Rooker-Feldman despite pending state-court appeals.   See, e.g., Caldwell v.
Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 347 (E.D.N.Y. 2010) (collecting
cases) (reasoning that the purpose of Rooker-Feldman was to prevent "federal courts (other than
the Supreme Court) from reviewing and reversing unfavorable state-court judgments.") (internal
quotation, citations, and alterations omitted).   "This purpose would be undermined if the doctrine
is inapplicable simply because a litigant happens to be seeking state appellate review of a state-
court judgment, while also seeking federal district court review of that judgment.   Regardless of
the status of any state court appeals, the litigant is still seeking federal review of a state-court
judgment."   Id.; see also Phillips ex rel. Green v. City of N.Y., 453 F. Supp. 2d 690, 714 (S.D.N.Y.
2006).

This Court finds that Rooker-Feldman applies as long as the federal action seeks review of
a previous state court judgment, regardless of whether that judgment is being appealed in the state
courts when the federal case begins.   Caldwell, 701 F. Supp. 2d at 347.   Indeed, the Supreme
Court made clear in Exxon Mobil, 544 U.S. at 283, that "Rooker-Feldman prevents federal courts
(other than the Supreme Court) from 'review[ing] and revers[ing] unfavorable state-
court judgments.'" (emphasis added).   Accordingly, because the challenged orders of the state

court were all entered before the April 9, 2019 filing of the complaint in this Court, the first and fourth procedural requirements are satisfied.

### ii.   Substantive Requirements of _Rooker-Feldman_

The substantive requirements of the Rooker-Feldman doctrine have also been satisfied. The second requirement has been met because Plaintiff complains of injuries caused by the State Court action.   The gravamen of the complaint is that the state court orders are void because New York State Domestic Relations Law's marriage license requirement is unconstitutional.   Indeed, this very issue was raised before Judge Leo—and rejected—demonstrating that Plaintiff has had the opportunity, of which he availed himself, to present such claims in state court.[2] (Compl. at ¶ III.C.)

To the extent that Plaintiff is raising new claims that were not already raised in state court and is claiming a deprivation of his constitutional rights as a result of the judgment of the state court, Rooker-Feldman still applies.   "[T]he fact that plaintiff is alleging a new claim . . . does not change the injury about which she complains," which was caused by the decision of the state court. Voltaire v. Westchester Cnty. Dep't of Soc. Servs., No. 11-CV-8876, 2016 WL 4540837, at *11 (S.D.N.Y. Aug. 29, 2016) (internal quotation omitted); Castiglione v. Papa, et al., 423 F. App'x 10, 13 (2d Cir. 2011) ("As noted by the District Court, [plaintiff] cannot avoid application of the Rooker-Feldman doctrine simply by 'presenting in federal court a legal theory not raised in state court,' for example, by framing her claims under §§ 1983 or 1985.") (citing Hoblock, 422 F.3d at 86). Indeed, the Second Circuit has long held that a "federal plaintiff cannot escape the Rooker-

---

[2] Although defendants do not invoke traditional collateral estoppel, collateral estoppel might also preclude Plaintiff from pursuing any claims in federal court that Judge Leo—or any other state court judge—has been previously denied.

<u>Feldman</u> bar simply by relying on a legal theory not raised in state court." <u>Hoblock</u>, 422 F.2d at 87. Thus, the second requirement is met.

The third requirement has also been satisfied because Plaintiff can only prevail here if the Court reviews and rejects the state court's judgments. Plaintiff's prayer for relief makes this clear. Plaintiff seeks a declaration that all of the New York State Court judges involved in <u>Spata v. Kelly</u>, 17657-2014 lacked subject matter jurisdiction and further seeks removal of <u>Spata v. Kelly</u>, 17657-2014 to federal court. Such relief would require a direct reversal of the state court judgments. (Compl. at ¶ V.) In asking this Court to find the state court lacked subject matter jurisdiction, "it is plain that [plaintiff] is inviting this court to 'reject'" the state court's decisions. <u>Trakansook v. Astoria Fed. Sav. & Loan Ass'n</u>, 06-CV-1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007). Because Plaintiff's factual allegations and the relief he seeks are inextricably intertwined with the state court's judgments, he has invited this Court to review and reject the state court's judgments, thereby satisfying the third element. Furthermore, <u>Rooker-Feldman</u> also bars Plaintiff's attempt to seek monetary damages. <u>Lomnicki v. Cardinal McCloskey Servs., No. 04-CV-4548, 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007)</u> ("Similarly, Plaintiff does not avoid <u>Rooker-Feldman</u> by seeking damages instead of injunctive relief. In order to award damages to Plaintiff, the Court would have to review the decision of the Family Court.").

Given that Plaintiff seeks to reverse the state court's judgments in the underlying state court proceedings, the Court concludes that all of the requirements of the <u>Rooker-Feldman</u> doctrine have been met. Accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's claims and the complaint is dismissed without prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

### 4. Eleventh Amendment Immunity

To the extent that any of Plaintiff's claims for money damages are being brought against any of the defendants in their official capacities, the Eleventh Amendment bars any such claims in federal court.   See Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted).

### C.  Plaintiff's Complaint Must Also Be Dismissed Under Rule 12(b)(6)

The Court will also address Defendants' arguments that Plaintiff has failed to state any plausible claims under Rule 12(b)(6).   As explained below, the Court finds that Plaintiff has not alleged any plausible claims.   Accordingly, dismissal of Plaintiff's claims is also appropriate under Rule 12(b)(6).[3]

### 1. Judicial Immunity

A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity."   Ceparano v. Southampton Justice Court, 404 F. App'x 537, 539 (2d Cir. 2011) (quoting Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).   "Further, if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his

---

[3]   A dismissal under Rule 12(b)(6) for failure to state a claim is often with prejudice.   However, because, as explained earlier, the Court has also concluded that dismissal is warranted on other grounds, including Younger abstention and Rooker-Feldman—doctrines which only permit dismissals to be without prejudice—the Court's dismissal of Plaintiff's claims under Rule 12(b)(6) will also be without prejudice.

authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356–57 (1978)). Thus, absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Mireles v. Waco, 502 U.S. 9, 13 (1991) (per curiam); Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005) ("[I]f the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction").

Plaintiff's damages claims against the defendant judges must be dismissed because those defendants are entitled to absolute immunity.   The acts of these judges were clearly made in their judicial capacities and these judges did not act in clear absence of all jurisdiction.   As explained infra, Plaintiff's claims that New York's marriage laws are unconstitutional is meritless Moreover, even if Plaintiff could show that these laws are unconstitutional that would not establish that these judges—who acted pursuant to statutes that have been on the books for many years were acting in the clear absence of all jurisdiction.

Absolute immunity also bars Plaintiff's claims for injunctive relief against these judges. "[I]njunctive relief is not available in an action pursuant to 42 U.S.C. § 1983 against a judicial officer for acts taken in that official's judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable.   Gonzalez v. Sharpe, No. 06-CV-1023, 2006 WL 2591065, at *2 (N.D.N.Y. Sept. 8, 2006) (quoting 42 U.S.C. § 1983).   "Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."   Ashmore v. New York, No. 12-CV-3032, 2012 WL 2377403, at *3 (E.D.N.Y. June 25, 2012), aff'd sub nom. Ashmore v. Prus, 510 F. App'x 47 (2d Cir. 2013) (quoting LeDuc v. Tilley,

No. 05–CV–157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005)).   Clearly Plaintiff has the

ability to appeal in state court.

### 2.   Plaintiff's Requests for Declaratory Relief are Also Substantively Meritless

Plaintiff's complaint seeks the following declaratory relief:

The judicial review of statutes N.Y. DOM § 15(4) & (5), and any other related
statutes, finding them unconstitutional on their face and struck down.

A ruling that all judges involved in New York State <u>Spata v Kelly</u> Index No. 17657-
2014, did in fact lose subject matter jurisdiction as a function of becoming an
accessory after the fact in a pattern of the deprivation of rights, including my right
to marry religiously under color of the law without due process despite having the
responsibility, authority and the judicial immunity to protect litigants from a statute
that is unconstitutional on its face.[4]

(Compl. at V.)[5]

Even if, somehow, none of the various doctrines set forth above precluded this Court from

reaching the merits of Plaintiff's claims above, it is clear that those claims—including his claims

New York York's Domestic Relations Laws concerning marriage licenses are unconstitutional—

are meritless.   It is undoubtedly constitutional for New York to regulate marriage by requiring a

marriage license and charging a $30 fee for that license—a fee that Plaintiff himself was obviously

---

[4]   According to Plaintiff's opposition brief, because New York's requirement of a "marriage license is a deprivation
of the fundamental right to marry under color of the New York State Domestic Relations statutes without due process
. . . when a New York State judge makes a finding of jurisdiction in a contested matrimonial matter, they necessarily
become accessories after the fact to the deprivation of rights under color of the law without due process, thus los[e]
their subject matter jurisdiction.   (Pl.'s Opp'n at 123–24.)

5  Plaintiff's complaint also seeks:

A ruling to remove New York State Spata v Kelly Index No. 17657-2014 to Federal Court as a fraud
upon the court pursuant to Federal Rules of Civil Procedure, Rule 60, and be adjudicated by a jury
before a judge who has no pattern of violating the Constitutionally protected rights of litigants, is
truly impartial, has an appropriate judicial temperament, knows the law, maintains subject matter
jurisdiction, and can provide both due process and equal protection under the law.

This request clearly seeks injunctive relief–namely, the removal of a state court proceeding to federal court.

able to pay when he received his marriage license in 1998.  Zablocki v. Redhail, 434 U.S. 374,

386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter

into the marital relationship may legitimately be imposed.")  Plaintiff's other request for

declaratory relief is similarly absurd and meritless.  Additionally, Plaintiff's claim that his

constitutional rights were violated because the state court judges who refused to find these state

statutes unconstitutional allegedly retained a pecuniary interest in the maintenance of these statutes

is also absurd.  For one thing, underlying this theory is Plaintiff's meritless claim that these

statutes are, in fact, unconstitutional.  Moreover, as defendants point out, the fees collected for

marriage licenses do not pay the salaries of the state court judges.   These fees are paid into either

municipal treasuries or the state commissioner of health's vital records management account.

N.Y. Dom. Rel. Law § 15(4).   State court judges, however, are employees of the New York State

and they are not paid out of municipal treasuries or the state's vital records management account.

N.Y. Judiciary Law § 39(6).

These claims are meritless.

### 3.  Plaintiff's Illegal Arrest Claim

Plaintiff alleges that he was illegally arrested by Officers Rodriguez and Feiler.

Apparently, these officers arrested Plaintiff for violating a no-contact order issued by a state court

judge.

A plaintiff cannot prevail on a claim for false arrest if the defendant had probable cause to

arrest the plaintiff.  Jaegly v. Couch, 439 F.3d 149, 151–52 (2d Cir. 2006).   Probable cause exists

where "the arresting officer [has] knowledge or reasonably trustworthy information sufficient to

warrant a person of reasonable caution in the belief that an offense has been committed by the

person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)).

Additionally, "[q]ualified immunity serves as a defense when [a defendant's] conduct does not violate clearly established law or it was objectively reasonable for the [defendant] to believe that his conduct did not violate such law." Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York, No. 16-1366, 706 F. App'x. 709 (2d Cir. Sept. 8, 2017). Qualified immunity protects a police officer from liability for damages if he can demonstrate that there was "arguable probable cause" for the arrest. Finigan v. Marshall, 574 F.3d 57, 61 (2d Cir. 2009). Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) "officers of reasonable competence could disagree on whether the probable cause test was met." Id. (internal quotations and citation omitted).

To the extent that Plaintiff is arguing that the officers could not legally arrest him because the state court judge's order was void, that claim is meritless. Moreover, even if Plaintiff could somehow establish that the judge's no-contact order was void, the two officers' reliance on that order would, at the very least, entitled them to qualified immunity.

Plaintiff also appears to allege that he was arrested even though he complied with the no-contact order. According to the complaint, the no-contact order prohibited "direct or indirect contact" with Plaintiff's son, but did not include any provisions about the minimum distance that Plaintiff had to keep from his son. Plaintiff claims that he complied with the no-contact order "to the letter." Plaintiff maintains that he never touched his son or spoke to him during the encounter at issue, and merely was "physically within his [son's] line of sight." Even accepting those allegations as true, the officers still had probable cause—and, at the very least, arguable probable

21

cause—to arrest Plaintiff.   Accordingly, Plaintiff's illegal arrest claim against the two officers fails.

### 4.   Claims Against Fisher

Insofar as Plaintiff alleges that Fisher is liable under Sections 1983 and/or 1985, such claims are untimely.   Given that Plaintiff's only allegations against Fisher relate to Plaintiff's purchase of his marriage license from Fisher in 1998, Plaintiff's Sections 1983 and 1985 claims arising from that transaction are well-outside the three-year statute of limitations given his April 9, 2019 filing of the complaint.   See N.Y. C.P.L.R. § 214(5); Wheeler v. Slanovec, 16-CV-9065, 2019 WL 2994193, *5 (S.D.N.Y. July 9, 2019) ("[F]ederal courts in New York apply a three-year statute of limitations for personal injury actions to § 1983 claims") (citing Patterson v. Cty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)); Ward v. Cty. of New York, 17-CV-3710, 2017 WL 6409021, *3 (S.D.N.Y. Sept. 18, 2017) (applying three-year statute of limitations to §§ 1983 and 1985 claims) (citation omitted).   Moreover, even if these claims were not time-barred, Fisher clearly would be entitled to qualified immunity.   See Zablocki v. Redhail, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.")   Accordingly, Plaintiff's claims against Fisher are dismissed.

### 5.   Claims Against Attorney General James

The complaint does not include any factual allegations about Attorney General James that give rise to a plausible claim against her.   Accordingly, his claims against her are dismissed.

**6.   Plaintiff Does Not Allege Any Plausible Claims Pursuant to Title 18 and the False Claims Act**

Plaintiff alleges various claims pursuant to 18 U.S.C. §§ 241, 242.  Plaintiff's Title 18 claims are not plausible, and must be dismissed, because there is no private right of action under these criminal statutes.  Hill v. Didio, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action under 18 U.S.C. § 242); Ippolito v. Meisel, 958 F. Supp. 155, 161 (S.D.N.Y. 1997) (holding that there is no private right of action under 18 U.S.C. §§ 241 and 242).

Similarly, Plaintiff's claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 are not plausible.  "The FCA permits private persons to bring suit where there has been fraud on the federal government.  The qui tam provisions of the FCA allow a private plaintiff to sue persons who knowingly defraud the federal government."  United States ex rel. Honda v. Passos, 20-CV-3977, 2020 WL 3268350, *2 (S.D.N.Y. June 15, 2020) (citing United States ex rel. Eisenstein v. Cty. Of New York, 556 U.S. 928, 932 (2009)).  However, pro se litigants lack standing to bring qui tam claims under the FCA.  See United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 93 (2d Cir. 2008).  Because Plaintiff, a non-lawyer pro se litigant, lacks standing, his FCA claims are not plausible and must be dismissed.

**E. Leave to Amend**

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted).  Though "pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile."  Hassan v. U.S. Dep't of Veterans Affairs, 137 F. App'x 418, 420 (2d Cir. 2005).

Here, the Court has carefully considered whether Plaintiff should be granted leave to further amend the complaint.   Given all of the grounds set forth above for dismissing Plaintiff's claims, the Court finds that any further amendment of Plaintiff's claims would be futile. Consequently, the Court declines to grant Plaintiff leave to amend his complaint.[6]

## III. CONCLUSION

For the reasons stated above, the Court grants Defendants' motions to dismiss. Accordingly, the Court dismisses Plaintiff's complaint in its entirety without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Therefore, should Plaintiff seek leave to appeal in forma pauperis, such status is denied for the purpose of any appeal.   See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:   November 30, 2020
Central Islip, New York

                                                    /s/ (JMA)
                                               JOAN M. AZRACK
                                             UNITED STATES DISTRICT JUDGE

---

[6]   Approximately six months after the fully briefed motions were filed with the Court, on March 9, 2020, Plaintiff filed a 482-page document entitled "Affidavit" purporting to contain "prima facie evidence" in support of his claims. (ECF No. 25.)   By letter dated March 18, 2020, Fisher objected to the Court's consideration of Plaintiff's March 9th submission.   (ECF No. 26.)   The Court declines to consider Plaintiff's voluminous and unauthorized submission. This submission concerns events that post-date the complaint and apparently seeks to raise new claims.   Furthermore, Plaintiff's submission includes an appellate brief that he filed with the Appellate Division in February 2020.   Rooker-Feldman bars Plaintiff from using this Court as a vehicle to appeal and overturn the decision at issue in his state court appeal.